1

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN DISTRICT OF CALIFORNIA

8

9   BERTHA MONCADA, INDIANA BERRENECHEA,          No. C 05-4762 CW
    and EDDA NIX,

10          Plaintiffs,

11      v.                                        ORDER DENYING
                                                  PLAINTIFFS'
12   ALLSTATE INSURANCE COMPANY, and DOES          MOTION FOR
    1 through 10,                                 PARTIAL SUMMARY
13                                                JUDGMENT AND
            Defendants.                           GRANTING IN PART
14                                                DEFENDANT'S
                                                  CROSS-MOTION FOR
15   _____/         SUMMARY JUDGMENT

16

17

18          Plaintiffs move for partial summary judgment on their claims

19   of breach of express warranty and breach of implied warranty.

20   Defendant Allstate Insurance Company opposes the motion and cross-

21   moves for summary judgment on all claims.  Plaintiffs oppose

22   Defendant's cross-motion.[1]  The matter was heard on December 1,

23   2006.  Having considered all of the papers filed by the parties,

24   _____

25          [1]In their combined reply to Defendant's opposition to their
    motion for partial summary judgment and opposition to Defendant's
26   cross-motion for summary judgment, Plaintiffs attempt to cross-move
    for additional partial summary judgment.  Because such motion comes
27   after the scheduled cut-off date for case dispositive motions and
    violates the Court's briefing order, the Court will not consider
28   Plaintiffs' cross-motion.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

the evidence cited therein and oral argument on the motions, the Court denies Plaintiffs' motion for partial summary judgment and grants in part Defendant's cross-motion for summary judgment.

BACKGROUND

This action on a homeowner's insurance policy arises out of a fire loss at Plaintiffs' home at 190/192 Albion Street in San Francisco.  Plaintiffs are Bertha Moncada, her living trust and two of her adult daughters, Edda Nix and Indiana Berrenechea.  They have sued their insurer, Allstate, for breach of contract, bad faith and breach of express and implied warranties and seek compensatory and punitive damages.  At the time of the fire, title to the property was held by Moncada's trust, of which Nix is the trustee.  Moncada was living in the upstairs unit of the building with two of her children and Berrenechea lived in the lower unit with two of her children and one grandchild.  Moncada's son lived in the garage.  Nix did not live at the property, but she and Moncada were the named insureds under the homeowner's policy. Berrenechea is considered an "insured person" under the policy because she lived in the insured building.

On January 26, 2004, a fire broke out at the home. Firefighters responded and put out the fire using water. Plaintiffs reported the fire to Allstate that day.  Andrew Aspegren, an Allstate claims adjuster,[2] met with Nix and her

---

[2]Aspegren is the structure adjuster, in charge of the claims related to the building itself.  In addition, two other adjusters worked on the claims, Richard Reney, the contents adjuster and Amy Patton, the Additional Living Expense (ALE) adjuster (who was also the inside coordinator).

**United States District Court**
For the Northern District of California

husband that day and determined that the fire and the resulting water damage were covered under the terms of the insurance policy. Plaintiffs were entitled to three categories of coverage under their policy: "Dwelling Protection," which insures the structure itself, "Personal Property Protection," which insures the contents of the home, and "ALE," which covers increased living expenses while the house is uninhabitable.  The terms of the policy provide that there is no monetary limit on the ALE coverage, but it is limited to twelve months of expenses.

During the initial meeting with Nix, Aspegren informed her that she could hire a contractor on her own to complete the repairs, or she could hire one through Allstate's preferred contractor and vendor program operated by Alacrity Services, LLC. Nix elected to hire one of the preferred contractors through Alacrity.  Once she made that decision, Aspegren called Patton, the Inside Coordinator at Allstate, and informed her that Nix wanted to hire a contractor through Alacrity.  Nix recalls that Aspegren told Patton "she has decided to go with Allstate."  Nix Decl. ¶ 4.

After receiving the phone call, Patton entered the claim into the Alacrity computer system to have a vendor assigned to the job. The computer program assigned V&M Restoration and the Restoration Cleanup Company to the job, with V&M working on the structural repairs and Restoration Cleanup working on smoke and water remediation.  The next day, Nix signed a "Work and Pay Authorization," authorizing V&M to begin emergency repairs at the home, and Aspegren met with a V&M estimator to begin evaluating the scope of the loss.

United States District Court

For the Northern District of California

On March 18, 2004, Nix called Aspegren to discuss having V&M complete all of the repairs at the home.  According to Allstate's log, Nix stated that she wanted to use V&M to complete all of the repairs "if we're OK with it."  Aspegren Decl. Ex. G.  Aspegren recorded that he "explained that we (Allstate) would recommend them and there is a 3 yr guarantee on their work, but decision to sign them up was hers as it is her house."  Id.

After negotiations between Aspegren and V&M and some delays attributable to V&M's lack of familiarity with Allstate's required estimate generating software, the final estimate of $181,599 was completed on May 20, 2004.  Pursuant to Plaintiffs' policy, Allstate issued a check to Plaintiffs for $140,029.39, representing the actual cash value (ACV) of the repairs based on the estimate less depreciation.  The check was sent with a copy of the estimate and a cover letter explaining that Plaintiffs could recover the amount withheld as depreciation when the repairs were completed.

V&M began work on the house, but Plaintiffs became dissatisfied with some of V&M's decisions during the process as well as with the speed and quality of the work.  Nix communicated directly with V&M at times and often asked Aspegren to intervene on her behalf.  Aspegren testified that he usually acted as an intermediary, relaying information back and forth between Nix and V&M.

By November, 2004, Plaintiffs were so frustrated with V&M that Nix informed Aspegren that she wanted to fire V&M.  Aspegren testified that he advised Nix that she could fire them but that his recommendation was "to stay the course with V&M, to try and see it

4

1    through."  Aspergren Deposition at 102:17-18.  He based that

2    recommendation on his belief that it would take even longer to

3    complete the job if Nix had to hire a new contractor.  Not only

4    would she have to hire the contractor and have it start from the

5    beginning in learning about the project, but she would have to work

6    with Allstate and V&M to determine how much work V&M had completed

7    and the payment to which it was entitled.  Based on that advice,

8    Nix decided not to fire V&M from the job.

9         After her conversation with Aspergren, Nix received by mail a

10   copy of a document entitled "Quality of Assurance Program."  The

11   title of the document appears directly below Alacrity's logo on the

12   page.  The document states that, in the event the repairs fall

13   below the standard of the warranty, "Alacrity Services, LLC through

14   the contractor or other designee will remedy any departures from

15   such standard."  FAC, Ex. B.  Further, it is signed by Alacrity's

16   president and instructs that if the insured is concerned about the

17   quality of the materials or work being done, she should "report it

18   promptly to Alacrity."  Id.  The document was printed on a piece of

19   paper containing Allstate's logo.  However, the document is printed

20   sideways on the page and the Allstate logo appears at the bottom

21   right-hand corner of the page, perpendicular to the text of the

22   document.

23        Plaintiffs continued to complain to V&M and Allstate about the

24   quality and pace of the work, but did not fire V&M.  V&M continued

25   to work on the house and when Moncada and Berrenechea were unable

26   to move back into the house in January, 2005, at the time their

27   Allstate ALE coverage expired, V&M agreed to pay for their

28                                    5

nonetemporary living costs.  Moncada and Berrenechea moved back into the house in the spring of 2005, but Plaintiffs were still dissatisfied with the ongoing work at their home.  Plaintiffs fired V&M from the job in June, 2005.  V&M filed a mechanic's lien against the property and sued Plaintiffs to recover the unpaid contract balance; Plaintiffs inform the Court that they have filed a counterclaim.

Allstate has paid Plaintiffs $187,677.60 for structural repairs, which includes the entire V&M contract price as well as $5,036.15 for additional items during the course of the repairs; $88,739.41 for the year of ALE benefits; and $104,984.72 for the repair or cash value of the contents of the home.  Although Allstate informed Plaintiffs that they could receive the difference between the cash value and the replacement cost of any items they chose to replace, Plaintiffs have not filed any such receipts. Allstate has no outstanding claims from Plaintiffs.  Plaintiffs filed this suit in San Francisco Superior Court on October 21, 2005, and Allstate removed it to this Court based on diversity jurisdiction.  Plaintiffs filed their FAC on February 21, 2006.

LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law.  Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

**United States District Court**
For the Northern District of California

6

United States District Court

For the Northern District of California

The moving party bears the burden of showing that there is no material factual dispute.  Therefore, the court must regard as true the opposing party's evidence, if supported by affidavits or other evidentiary material.  <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d at 1289.  The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case.  The substantive law will identify which facts are material.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods.  <u>Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc.</u>, 210 F.3d 1099, 1106 (9th Cir. 2000).

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

<u>Id.</u>

If the moving party discharges its burden by showing an absence of evidence to support an essential element of a claim or defense, it is not required to produce evidence showing the absence

7

United States District Court

For the Northern District of California

1  of a material fact on such issues, or to support its motion with

2  evidence negating the non-moving party's claim.  <u>Id.</u>; <u>see also</u>

3  <u>Lujan v. Nat'l Wildlife Fed'n</u>, 497 U.S. 871, 885 (1990); <u>Bhan v.</u>

4  <u>NME Hosps., Inc.</u>, 929 F.2d 1404, 1409 (9th Cir. 1991).  If the

5  moving party shows an absence of evidence to support the non-moving

6  party's case, the burden then shifts to the non-moving party to

7  produce "specific evidence, through affidavits or admissible

8  discovery material, to show that the dispute exists."  <u>Bhan</u>, 929

9  F.2d at 1409.

10  If the moving party discharges its burden by negating an

11  essential element of the non-moving party's claim or defense, it

12  must produce affirmative evidence of such negation.  <u>Nissan</u>, 210

13  F.3d at 1105.  If the moving party produces such evidence, the

14  burden then shifts to the non-moving party to produce specific

15  evidence to show that a dispute of material fact exists.  <u>Id.</u>

16  If the moving party does not meet its initial burden of

17  production by either method, the non-moving party is under no

18  obligation to offer any evidence in support of its opposition.  <u>Id.</u>

19  This is true even though the non-moving party bears the ultimate

20  burden of persuasion at trial.  <u>Id.</u> at 1107.

21  Where the moving party bears the burden of proof on an issue

22  at trial, it must, in order to discharge its burden of showing that

23  no genuine issue of material fact remains, make a <u>prima facie</u>

24  showing in support of its position on that issue.  <u>UA Local 343 v.</u>

25  <u>Nor-Cal Plumbing, Inc.</u>, 48 F.3d 1465, 1471 (9th Cir. 1994).  That

26  is, the moving party must present evidence that, if uncontroverted

27  at trial, would entitle it to prevail on that issue.  <u>Id.</u>; <u>see also</u>

28

8

United States District Court

For the Northern District of California

1  <u>Int'l Shortstop, Inc. v. Rally's, Inc.</u>, 939 F.2d 1257, 1264-65 (5th

2  Cir. 1991).  Once it has done so, the non-moving party must set

3  forth specific facts controverting the moving party's <u>prima facie</u>

4  case.  <u>UA Local 343</u>, 48 F.3d at 1471.  The non-moving party's

5  "burden of contradicting [the moving party's] evidence is not

6  negligible." <u>Id.</u>  This standard does not change merely because

7  resolution of the relevant issue is "highly fact specific."  <u>Id.</u>

8                              DISCUSSION

9  I.    Breach of Contract

10       Plaintiffs' first claim is based on their allegation that they

11  have performed each of the conditions required of them by the

12  insurance policy while Allstate has not performed its obligations.

13  Allstate moves for summary judgment on this claim, arguing that

14  Plaintiffs have not identified any outstanding claims and have made

15  various admissions that Allstate has responded positively to each

16  of their claims.  Plaintiffs counter that they "provided Allstate

17  with both actual and constructive notice of additional claims of

18  damage," which they allege triggered Defendant's obligation to

19  investigate.  Plaintiffs' Opposition at 16-17.

20       To prevail on a claim for breach of contract, a plaintiff must

21  demonstrate (1) the existence of a contract, (2) the plaintiff's

22  performance or excuse for non-performance, (3) the defendant's non-

23  performance, and (4) the resulting damages.  See <u>Regan Roofing Co.,</u>

24  <u>Inc. v. Superior Court</u>, 24 Cal. App. 4th 425, 435 (1994).

25  Although Plaintiffs argue that the record demonstrates that

26  Allstate improperly withheld at least six categories of policy

27  benefits, they do not point to any evidence in the record that

28                                   9

Allstate was or should have been aware that Plaintiffs were claiming those benefits.  Nor can the Court locate any such evidence.  After the hearing on this motion, the Court allowed Plaintiffs to submit supplemental citations to the record to support their claims.  However, the citations provided by Plaintiffs do not support their position that they made Allstate aware that they were claiming the benefits related to the alleged additional damages.

Plaintiffs first claim that Allstate withheld $18,750 in "ALE payments on the water loss claim" and $3,850 in "ALE underpayments on the fire loss claim."  Plaintiffs' Opposition at 16.  However, Plaintiffs do not demonstrate how they calculated the $18,750 figure, nor do they provide evidence that they made a claim for ALE due to a water loss claim.  Further, it is undisputed that Allstate paid Plaintiffs' ALE benefits for the entire year provided for in the policy.  Plaintiffs' $3,850 claim for underpayments likewise does not establish a claim for breach of contract.[3]  As Defendant points out, under Plaintiffs' policy either party may request that disputes over the amount of a loss be decided by appraisal by an independent umpire.  This provision is required by California law. See Cal. Ins. Code § 2071.  California law also requires that Plaintiffs comply with all of the provisions of the policy before filing a lawsuit for recovery of any claim.  Id.  Defendant argues

---

[3]Moncada elected to stay with Nix and to have Allstate "cash out" her ALE benefits, by paying her a monthly amount estimating the fair rental value of her unit per month.  Plaintiffs generated this underpayment figure based on the difference between the monthly cash out rate paid to Moncada and the actual fair market value of the property as a rental unit.

United States District Court

For the Northern District of California

United States District Court

For the Northern District of California

that this lawsuit is premature because it has not had an opportunity to seek appraisal of these recently-surfaced claims. Defendant points out that as late as September, 2006, Plaintiffs stated in depositions that Allstate had paid their claims in full.

Plaintiffs next allege that Allstate improperly deducted $13,587.31 in depreciation from its structure payments and underpaid the structure benefits by $153,395.46. However, neither amount supports a claim for breach of contract. Nix stated in her declaration that Allstate has already fully paid the amount held back for depreciation and, as stated above, any disputes regarding underpayments must be submitted to appraisal if requested by either party. Further, the $153,395.46 figure represents the amount that a contractor "retained by plaintiffs to conduct an investigation and assessment of the repair and reconstruction work that was performed at their house after the fire loss" estimated was necessary for "additional reconstruction and repair at the subject property as a result of the fire loss and subsequent water intrusion." Jackowitz Decl. ¶¶ 3, 8. Therefore, the alleged underpayment is based on either the work completed by V&M before it was fired from the job, or the additional amount Plaintiffs believe is necessary to pay for work to fix V&M's faulty repairs or to fix damage that has not yet been fixed. Neither of these constitute damages for a claim against Allstate. Plaintiffs have not produced any evidence that they made claims for further repairs after firing V&M. Further, as discussed below, the Court finds that Allstate did not guarantee V&M's work. Therefore, any faulty work completed by V&M cannot be held against Allstate.

11

United States District Court

For the Northern District of California

1    Plaintiffs' third claim of withheld benefits is based on

2  "personal contents that were valued at $0.00."  Plaintiffs'

3  Opposition at 16.  However Plaintiffs testify that they have not

4  made any further claims to Allstate based on the ACV assigned to

5  the items they mention.  Therefore, this is also an allegation that

6  Allstate undervalued some of Plaintiffs' property in paying their

7  claim rather than an allegation that Allstate refused to pay

8  benefits claimed.  Defendant must be given an opportunity to seek

9  to have this allegation as well decided by appraisal.

10    Plaintiffs next allege that Allstate withheld payment for

11  abatement and remediation of asbestos, lead paint and mold.

12  However, Plaintiffs did not make any claims against their policy

13  based on the existence of asbestos, lead paint or mold.[4]

14  Therefore, Plaintiffs cannot support a breach of contract claim on

15  this basis.  Plaintiffs argue that Allstate had constructive notice

16  of the mold problem and the presence of lead paint and asbestos and

17  that it therefore had a duty to investigate, to inform Plaintiffs

18  of the existence of any problem and to abate and remediate the

19  problem.  However, Plaintiffs neither identify any such duty in

20  their policy nor identify any claim made for such abatement and

21  remediation since the time of the loss.

22    Similarly, Plaintiffs claim that Allstate improperly withheld

23  "payment for the personal property currently contaminated with

24  _____

25    [4]Plaintiffs allege that they "reported the existence of indoor
mold growth on the flooring in both flats."  Plaintiffs' Opposition
26  at 9.  However, the citations provided discuss only stains and pre-
existing dry rot in the floors.  Further, it appears that Allstate
     replaced or repaired the wood floors in each of the rooms where
27  there was water damage.

28                                   12

1   lead, asbestos, mold, and bacteria, including payments for the

2   original packed-out personal property on the lower flat that was

3   never cleaned or paid for by Allstate," Plaintiffs' Opposition at

4   16, but do not provide any evidence that they made a claim for such

5   payment.  Further, to the extent that Plaintiffs characterize this

6   withheld payment as an underpayment for their personal belongings,

7   the dispute is subject to appraisal as discussed above.

8        Finally Plaintiffs claim that Allstate improperly withheld

9   "payment for the full extent of water damage, including the water

10  damage from the second rainstorm claim." Plaintiffs' Opposition at

11  16.  Again, Plaintiffs allege damages from the underpayment of a

12  claim and from the denial of a claim that they never made, the

13  second rainstorm claim.  As discussed above, disputes about the

14  amount of coverage are subject to appraisal and Allstate is not

15  obliged to pay claims that have never been submitted.

16       Plaintiffs fail to demonstrate that there is a triable issue

17  of fact with respect to their breach of contract claim.  Each of

18  the claims on which they allege Allstate improperly denied benefits

19  concerns either an alleged underpayment on a claim that was paid or

20  the non-payment of a claim that was never made.  As discussed above

21  both California law and Plaintiffs' policy require that any

22  disputes regarding underpayment of a claim that was paid be

23  submitted to binding appraisal.

24       Further, Allstate's failure to pay claims that were never made

25  cannot establish a breach of contract.  Plaintiffs argue that, even

26  if they never made formal claims for policy benefits, they are

27  entitled to those benefits because Allstate had constructive notice

28                                  13

United States District Court

For the Northern District of California

of their claims.  Plaintiffs first cite California Shoppers, Inc.
v. Royal Globe Ins. Co., 175 Cal. App. 3d 1 (1975), to support
their argument that Allstate should have investigated Plaintiffs'
needs more thoroughly because the fire loss put it on constructive
notice of each of Plaintiffs' other "claims."  However, California
Shoppers is not analogous to this case.  There, Royal received, in
an Adco envelope, a copy of a complaint brought by its insured,
Adco, against California Shoppers.  There was no cover letter
accompanying the letter.  Royal assumed that the "claim" came from
Adco and sent it a letter informing it that its decision to bring a
suit was not covered by its policy.  However, the adjustor who
processed the claim did not check and was unaware that California
Shoppers was also insured by Royal and that the complaint was sent
on behalf of California Shoppers.  The California court held that
given the circumstances under which the insurance company received
the copy of the complaint, it should have investigated further to
discover that it had a duty to defend California Shoppers.

However, unlike California Shoppers, Plaintiffs submitted no
documentation that could be considered a claim that was denied in
this case.  The only claim that it made, for the initial loss from
the fire, was paid by Allstate.  Further, California courts
recognize that "it is important to distinguish between the limited
scope of the coverage provided by first party property policies and
the broad scope of third party liability policies from which many
implied rights may be found."  McMillin Scripps North Partnership
v. Royal Ins. Co., 19 Cal. App. 4th 1215, 1220 (1993).

Plaintiffs also cite McCormick v. Sentinel Life Insurance Co.,

14

153 Cal. App. 3d 1030 (1984), for the proposition that an insured need not comply with "technical policy provisions" and that "Allstate cannot ignore its obligations under the policy on the sole ground that plaintiffs failed to provide 'documentation' of additional damage claims." Plaintiffs' Opposition at 17. However, McCormick presupposes the existence of a stated claim and holds only that an insurer "does not have the right to insist the claim be proved only through certain types of evidence. Nor does it exhibit good faith in denying a claim merely because an insured failed to dot the i's or cross the t's on a claim form or other submission." 153 Cal. App. 3d at 1046. Here Plaintiffs did not make a claim that was denied because they failed to comply with a formality. Rather, Plaintiffs did not make any claims that were denied at all.

Therefore, the Court grants Defendant's cross-motion for summary judgment on Plaintiffs' claim for breach of contract except to the extent the claim is based on alleged underpayment of benefits. If Defendant wishes to pursue appraisal to resolve the disputed amounts of payment, it shall file by January 3, 2007, a properly noticed motion seeking court-ordered appraisal. If Plaintiffs wish to oppose such motion, they shall do so by January 10, 2007. Any reply from Defendant shall be due by January 15, 2007. The parties should address the disposition that should be made of this case if appraisal is ordered, and what further litigation, in any, could follow the appraisal. The matter will be decided on the papers. If Defendant does not file a motion seeking appraisal, the case will proceed to pretrial conference and jury

15

**United States District Court**
For the Northern District of California

1  trial to resolve Plaintiffs' breach of contract claims that are

2  based upon alleged underpayment of benefits.

3  II.  Breach of Implied Covenant of Good Faith and Fair Dealing

4       Allstate moves for summary judgment on Plaintiffs' claim for

5  breach of the implied covenant of good faith and fair dealing,

6  arguing that Plaintiffs cannot establish that it unreasonably

7  withheld policy benefits.

8       A covenant of good faith and fair dealing is implied in every

9  insurance contract.  <u>Egan v. Mutual of Omaha Insurance Co.</u>, 24 Cal.

10 3d 809, 818 (1979), <u>cert. denied</u>, 445 U.S. 912 (1980); <u>see also</u>,

11 <u>Gourley v. State Farm Mutual Auto. Insurance Co.</u>, 53 Cal. 3d 121,

12 127 (1991).  "An insurer, like any other party to a contract, owes

13 a general duty of good faith and fair dealing. . . . There are at

14 least two separate requirements to establish breach of the implied

15 covenant: (1) benefits due under the policy must have been

16 withheld; and (2) the reason for withholding benefits must have

17 been unreasonable or without proper cause."  <u>Love v. Fire Ins.</u>

18 <u>Exch.</u>, 221 Cal. App. 3d 1136, 1147, 1152 (1990).

19      Allstate argues that Plaintiffs' cause of action must fail

20 because they have not established that it withheld any benefits

21 claimed.  Plaintiffs counter that Allstate had a duty to

22 investigate their claim more thoroughly, that if it had it would

23 have provided more coverage, and that its failure to do so breached

24 the covenant of good faith and fair dealing.

25      However, as Defendant notes, it had no duty to anticipate that

26 Plaintiffs might be able to make additional claims or to inform

27 Plaintiffs of those potential claims.  Rather, Allstate fulfilled

28

its duty by establishing the scope of Plaintiffs' loss at the time of the fire and providing payment based on Plaintiffs' contractor's estimate of the amount of work that needed to be done to restore the property to its pre-fire condition.

The implied covenant of good faith and fair dealing acts as a "supplement to express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement." Waller v. Truck Ins. Exchange, Inc., 11 Cal. 4th 36, 44 (1995). "Absent [a] contractual right, however, the implied covenant has nothing upon which to act as a supplement, and 'should not be endowed with an existence independent of its contractual underpinnings.'" Id. (quoting Love, 221 Cal. App. at 1153).

Because Plaintiffs are unable to establish that there is a triable question with respect to the withholding of benefits that were not claimed, as discussed above with respect to their claim for breach of contract, their claim for breach of the implied covenant of good faith and fair dealing necessarily fails as well. Further, because any disputes over alleged underpayments were not raised until after this litigation began, the Court finds that even if Plaintiffs establish that Allstate underpaid them, such actions cannot create liability for bad faith.

Plaintiffs also attempt to argue that their claim for a breach of the covenant of good faith and fair dealing is supported by Allstate's supervision of V&M's faulty repair of the home. Allstate cites Rattan v. United Servs. Auto. Ass'n, 84 Cal. App. 4th 715 (2000), to support its argument that it cannot be held

17

**United States District Court**
For the Northern District of California

liable for violating the covenant of good faith and fair dealing based on the performance of the contractor performing the repairs. Plaintiffs attempt to distinguish <u>Rattan</u> by arguing that Allstate "'managed the project' including controlling every aspect of its preferred vendors' work" and was therefore more involved with the contractor's work than was the insurer in <u>Rattan</u>. Plaintiffs' Opposition at 22. However, Plaintiffs have provided no evidence demonstrating that Allstate managed V&M's work. Rather, the evidence produced demonstrates that Allstate sought to act as an intermediary between its insureds and the contractor selected through its preferred vendor program in order to facilitate the completion of the job. Further, the insurer in <u>Rattan</u> itself guaranteed the work done by its preferred vendors and still was not held responsible for the work completed. 84 Cal. App. 4th at 722. As discussed below, Alacrity, not Allstate, issued the guarantee for V&M's work in this case. Therefore, <u>Rattan</u> does not support Plaintiffs' position that Allstate was responsible for V&M's work.

The Court grants Defendant's cross-motion for summary judgment on Plaintiffs' claim for breach of the implied covenant of good faith and fair dealing.

III. Breach of Express Warranty

Plaintiffs next claim that Allstate provided an express warranty guaranteeing V&M's work on the house. Plaintiffs move for summary judgment on the issue, arguing that the undisputed evidence establishes such a warranty. Defendant cross-moves for summary judgment arguing that the warranty Plaintiffs rely upon was issued by Alacrity rather than Allstate.

18

**United States District Court**
For the Northern District of California

In their first amended complaint (FAC), Plaintiffs identify a document as "Allstate's 'Assurance of Quality'" and state that their claim for breach of express warranty is based on the fact that the repairs completed by V&M do not meet the standard in the warranty.  FAC at ¶ 11, 31.  Defendant counters, and the Court agrees, that the plain terms of the document demonstrate that the warranty is issued by Alacrity rather than Allstate.  The title of the document "Quality Assurance Program" appears directly below Alacrity's logo on the page.  FAC, Ex. B.  Further, the document states that, in the event the repairs fall below the standard of the warranty, "Alacrity Services, LLC through the contractor or other designee will remedy any departures from such standard," it is signed by Alacrity's president, and it instructs that if the insured is concerned about the quality of the materials or work being done, she should "report it promptly to Alacrity." _Id._

The only reference to Allstate on the document is a statement that the work is being done in relation to a claim brought under an Allstate policy. _Id._  It is true that the copy of the certificate provided to Plaintiffs was printed on a piece of paper which also contained the Allstate logo.  However, Aspegren testified that the fact that the document was printed on the Allstate paper was a clerical error.  Aspegren Deposition at 215:5-11.  This is supported by the fact that the document, with its Alacrity logo, is printed sideways on the page and the Allstate logo appears at the bottom right-hand corner of the page, perpendicular to the text of the document.

In their motion, Plaintiffs point to various documents

19

**United States District Court**
For the Northern District of California

provided by Allstate to other customers, statements on its website, and internal Allstate documents to establish that Allstate, not Alacrity guaranteed V&M's work.  However, as Allstate points out, those documents are not mentioned as the source of an express warranty in the operative complaint and Plaintiffs have not demonstrated that they were aware of any of the documents or that they even had access to most of them.  The website is the only source of information aside from the Quality Assurance document that Plaintiffs might have seen.  Yet they have presented no evidence that they actually read or relied upon the representations on the site.  <u>See</u> Tacata Declaration (Allstate website accessed by litigation secretary).  California courts have held that "[u]nder the law relating generally to express warranties a plaintiff must show reliance on the defendant's representation." <u>Kazerouni v. De Satnick</u>, 228 Cal. App. 3d 871, 873 n.3 (1991).  Therefore, the Court denies Plaintiffs' motion for partial summary judgment and grants Defendant's cross-motion for summary judgment on this claim.

IV.  Breach of Implied Warranty

Plaintiffs' final claim is that "[b]y and through their conduct of evaluating, coordinating, arranging, and contracting for, the repair of Plaintiffs' dwelling and structure, Allstate . . . impliedly warranted to Plaintiffs that the repair work and materials used for that work would be of merchantable quality."  FAC ¶ 35.  In their motion for partial summary judgment, Plaintiffs simply argue that their claim "for breach of implied warranty is broader than a claim for breach of express warranty."  Plaintiffs' Motion for Partial Summary Judgment at 13.

20

1    However, as Defendant points out, "Privity of contract is a

2  prerequisite in California for recovery on a theory of breach of

3  implied warranties of fitness and merchantability." <u>All West</u>

4  <u>Electronics, Inc. v. M-B-W-, Inc.</u>, 64 Cal. App. 4th 717, 726

5  (1998).  There was no contract between Plaintiffs and Allstate with

6  respect to V&M's work.  Plaintiffs' existing contract with Allstate

7  covered the fire damage to their home, but all of the repairs were

8  made pursuant to a separate contract between Plaintiffs and V&M.

9  Therefore, the Court denies Plaintiffs' motion for partial summary

10 judgment and grants Defendant's motion for summary judgment on this

11 claim.

                              CONCLUSION

13    For the foregoing reasons, the Court DENIES Plaintiffs' motion

14 for partial summary judgment (Docket No. 39) and GRANTS in part

15 Defendant's motion for summary judgment (Docket No. 53).[5]

17    IT IS SO ORDERED.

18 Dated:  12/20/06                _____
                                  CLAUDIA WILKEN
19                                United States District Judge

---

       [5]Defendant's objections to evidence submitted by Plaintiffs
26 (Docket Nos. 68, 88) are DENIED as moot.  The Court did not
   consider any improper or inadmissible evidence in deciding these
27 motions.

                                21

United States District Court

For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

22